IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF THE CSFB MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2001-HE16, | ) ) ) ) ) ) ) | CV. NO. 08-00358  DAE-KSC |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| PAUL YAMAMURA, ESQ., Successor Personal Representative of the Estate of Herbert W.S. Kam; UNITED STATES OF AMERICA; STATE OF HAWAII - DEPARTMENT OF TAXATION; JOHN AND MARY DOES 1-20; DOES PARTNERSHIPS, CORPORATION AND OTHER ENTITIES 1-20, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT DIRECTOR OF TAXATION,
STATE OF HAWAII'S MOTION FOR SUMMARY JUDGMENT
AND ORDER DENYING DEFENDANT PAUL YAMAMURA'S
AMENDED MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  At issue is Defendant Director of Taxation, State of

Hawaii's (the "State of Hawaii") Motion for Summary Judgment (Doc. # 19) and

Defendant Paul Yamamura's ("Yamamura") Amended Motion for Summary

Judgment (Doc. # 24).   After reviewing the parties' motions, the supporting and

opposing memoranda, and the various responses filed by parties in this case, the

Court GRANTS State of Hawaii's Motion for Summary Judgment and DENIES

Yamamura's Amended Motion for Summary Judgment.

<u>BACKGROUND</u>

The essential facts of this case are not in dispute.  On April 3, 1998,

the United States recorded a federal tax lien against Herbert W.S. Kam ("Kam")

for unpaid taxes.  On November 8, 2001, Kam executed a mortgage that

encumbered that certain real property located at 46-164 Hinapu Street, Kaneohe,

Hawaii 96744, Tax Map Key (1) 4-6-020-053 (the "Property").  (State of Hawaii

Mot. Ex. C(2).)  Subsequently, US National Bank Association ("US Bank")

acquired the mortgage.  Kam then defaulted on his obligation under the mortgage.

(State of Hawaii Mot. Ex. C(4).)

During this time, Kam also incurred state tax liens for Hawaii

withholding taxes, penalties, and interest for tax years 1995, 1996, 1997, 1999,

2000 and March 2001 in an amount of $662,866.12.  (State of Hawaii Mot. Ex.

E(A).)  These state tax liens were recorded on February 20, 2002, and June 26, 2002.  (State of Hawaii Mot. Ex. E(B) & E(C).)

On May 1, 2008, US Bank conducted a non-judicial foreclosure sale of the Property.  The notice of foreclosure expressly indicated that the Property was being "sold SUBJECT to a Notice of Federal Tax Lien dated March 22, 1998." (State of Hawaii Mot. Ex. C(7).)  The Property was sold for $556,000.00 to purchaser Daryl Kam or his nominee (the "Purchaser").  After the default under the mortgage was satisfied, there remained a surplus from the sale in the amount of $207,514.67 held by escrow company Title Guaranty Escrow Services (the "Surplus").

On June 25, 2008, US Bank filed a complaint for interpleader in the Circuit Court of the First Circuit, State of Hawaii, naming the United States, State of Hawaii, and Yamamura (as successor personal representative of the estate of Kam[1]) as persons who may be entitled to the Surplus.  Yamamura then filed a cross-claim on July 15, 2008.  The action was removed in its entirety to this Court on August 6, 2008.[2]

---

[1]Kam died on January 23, 2008.  (State of Hawaii Mot. Ex. C(5).) Yamamura is acting as the successor personal representative of the estate.

[2]This Court has jurisdiction over the interpleader action pursuant to 28

(continued...)

3

On June 17, 2009, State of Hawaii filed a motion for summary judgment, asserting that it is entitled to the Surplus.  (Doc. # 19.)  That same day, Yamamura filed a motion for summary judgment, requesting that the Court order the Surplus to be used to pay off the remaining federal tax lien held on the Property by the United States.  (Doc. # 21.)  Yamamura then amended his motion on June 18, 2009, to instead request that the Surplus be paid over to Yamamura so that he could distribute the monies pursuant to the probate laws.  (Doc. # 24.)  On June 24, 2009, the United States filed a response to both motions, in essence agreeing with State of Hawaii that it was entitled to the funds.  (Doc. # 27.)  US Bank then filed a "position memorandum" in response to the motions in which it took no position with respect to whom the excess sales proceeds are distributed but requested that its reasonable attorneys' fees and costs be paid prior to distribution of the Surplus to either party.  (Doc. # 36.)

On August 10, 2009, State of Hawaii filed its opposition to Yamamura's motion.  (Doc. # 34.)  Yamamura likewise filed an opposition to State of Hawaii's motion the same day.  (Doc. # 37.)  On August 24, 2009, the parties

_____

(...continued)
U.S.C. § 2410(a)(5) (concurrent federal and state court jurisdiction for any interpleader action with respect to property on which the United States has a lien).

each filed replies in support of their motions.  (Doc. ## 40, 41.)  Yamamura

amended his reply on August 25, 2009.  (Doc. # 42.)

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the

pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't

of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d

1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of

factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317,

323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  A moving party without the ultimate burden of persuasion at trial -- usually,

but not always, the defendant -- has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  Porter,

419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).

<u>DISCUSSION</u>

In their motions, Yamamura and the State of Hawaii each claim that

they should receive first priority to the Surplus.  Yamamura contends that Hawaii

statutory law dictates all proceeds from a foreclosure sale go to the mortgagor (i.e.,

the former owner).  (Amended Mot. at 3.)  He asks the Court to distribute the

Surplus to him, subject to all tax liens that may attach to it, so that he can

administer the monies pursuant to the applicable probate laws.  (Id.)

The State of Hawaii, on the other hand, argues it is entitled to the

Surplus as the sole junior lien holder.  (State of Hawaii Mot. at 5-6.)  The State of

Hawaii claims that all Surplus funds should be distributed to it due to its

outstanding tax liens filed against Kam and his property.  (Id.)  The United States

supports this conclusion, emphasizing that it maintains its tax lien on the Property

because the foreclosure sale expressly sold the Property subject to the federal lien. (Doc. # 27 at 5.)

Finally, US Bank filed a memorandum which did not take a position with respect to whom the excess sales proceeds are distributed as between Yamamura and the State of Hawaii.  (Doc. # 36 at 3.)  US Bank did request, however, that the Court award reasonable attorney's fees and costs for bringing the interpleader action.  (Id.)

I.     Distribution of the Surplus

"It is well established that a decree of foreclosure in a mortgage foreclosure action extinguishes the liens of junior lienors[3] who are parties to the action."  Theo. H. Davies & Co., Ltd. v. Long & Melone Escrow, Ltd., 876 F. Supp. 230, 234 (D. Haw. 1995); see Powers v. Ellis, 56 Haw. 587, 589, 545 P.2d 1173, 1174 (1976); Haw. Rev. Stat. § 667-3[4].  When a surplus arises, the excess

_____

[3]The Court notes that the United States federal tax lien is not terminated by the foreclosure.  The federal tax lien was recorded against Kam in 1998, prior to execution of the US Bank mortgage.  As such, it is senior to the foreclosed mortgage and, thus, remains on the Property.  See Restatement (Third) of Property: Mortgages § 7.4 cmt. c. (1997) ("Senior lienors have no lien claim to a surplus produced by the foreclosure of a junior mortgage.  Unlike their junior counterparts, their liens are unaffected by foreclosure and remain on the foreclosed real estate. They remain free to foreclose on the real estate . . ..").

[4]Hawaii Revised Statute § 667-3 reads:

(continued...)

monies are first "applied to liens and other interests terminated by the foreclosure in order of their priority."  Restatement (Third) of Property: Mortgages § 7.4 (1997).  In essence, the surplus is treated as the "substitute *res*," standing in place of the foreclosed real estate.  <u>Id.</u> at cmt. a.  As such, "the liens and interests that previously attached to the real estate now attach to the surplus."  <u>Id.</u>  In general, then, the claim of the original mortgagor to any remaining surplus "is subordinate to the claims of all the other holders of liens and interests terminated by the foreclosure."  <u>Id.</u> at cmt. b.  Only after those liens are paid may any remaining balance then be distributed to the mortgagor.  <u>Id.</u>

        In this case, it is undisputed that the State of Hawaii recorded valid and enforceable tax liens against Kam in 2002.  Pursuant to Hawaii Revised Statute § 231-33(b), these state tax liens entered in favor of the state "upon all property and rights to property, whether real or personal, belonging to any person liable for

---

[4](...continued)
> Mortgage creditors shall be entitled to payment according to the priority of their liens, and not pro rata; and judgments of foreclosure shall operate to extinguish the liens of subsequent mortgages of the same property, without forcing prior mortgagees to their right of recovery. The surplus after payment of the mortgage foreclosed, shall be applied pro tanto to the next junior mortgage, and so on to the payment, wholly or in part, of mortgages junior to the one assessed.

8

the tax."  Because these tax liens were terminated by the foreclosure instituted by

US Bank, they now attach to the surplus as they had previously attached to the real

estate.  Restatement (Third) of Property: Mortgages § 7.4   cmt. a.  As such, any

Surplus monies must first be paid to the State of Hawaii before being distributed to

Yamamura.

Yamamura relies on Hawaii Revised Statute § 667-10[5] for his

contention that the Surplus should be paid to him first.  (Amended Mot. at 3.)  It is

true that section 667-10 seems to provide for surplus payments to be made to the

mortgagor with no reference to the rights of junior lienors.  However, similar

statutes have generally been interpreted to give junior lien holders rights in the

surplus, despite the absence of explicit language dictating such action.  See 1 Grant

S. Nelson & Dale A. Whitman, Real Estate Finance Law (5th ed.) § 7.31.

Moreover, section 667-10 simply cannot be read in a vacuum, without reference to

the several Hawaii state cases which evaluate the priority of lien holders' claims to

a surplus.  See Bank of Hawaii v. Horwoth, 71 Haw. 204, 212-13, 787 P.2d 674,

---

[5]Hawaii Revised Statute § 667-10 reads, in pertinent part:
    When public sale is made of the mortgaged property
    under this chapter, the remainder of the proceeds, if any,
    shall be paid over to the owner of the mortgaged
    property, after deducting the amount of claim and all
    expenses attending the same.

679-80 (1990);  Powers, 56 Haw. at 589, 545 P.2d at 1174; Noar v. Bosse, 18 Haw. 352 (Haw. Terr. 1907); Whitney v. Ross, 17 Haw. 453 (Haw. Terr. 1906);  see also Island Title Corp. v. Bundy, 488 F. Supp. 2d 1084, 1096 (D. Haw. 2007).

The other cases cited by Yamamura are likewise unavailing.  The Hawaii Supreme Court decision in Bank of Hawaii v. Horwoth may not be used, as Yamamura attempts, to stand for the proposition that the mortgagor is always entitled to surplus proceeds.  (Original Mot. at 4.)  In Bank of Hawaii, the primary issue presented was who was entitled to the remainder of proceeds when the mortgaged property was sold subject to an agreement of sale after the mortgage. 71 Haw. at 210, 787 P.2d at 678.  The case did not, by its very terms, involve a foreclosure action nor did it implicate tax liens or liens of any kind.  As such, it cannot be used for the broad proposition that a mortgagor is always entitled to surplus proceeds regardless of the presence of junior lien holders.  Similarly, the cases cited by Yamamura in his amended reply brief simply recite the general rule that a surplus may be paid over to a mortgagor.  (See Amended Reply at 2.)  They are not instructive, however, on whether to first pay lien holders who have fully exercised their rights prior to disbursement to the mortgagor.

Accordingly, the Court finds that the State of Hawaii, as the sole junior lien holder, is entitled to first priority to the Surplus.  The State of Hawaii is

owed in excess of $662,000.00 on its tax liens, far more than the amount of the

Surplus proceeds ($207,514.67.).  Thus, Yamamura is not entitled to any remaining

balance, as the entirety of the Surplus will be paid to the State of Hawaii.

## II.     Attorney's Fees and Costs

One issue remaining, however, is whether US Bank is entitled to an

award of attorney's fees prior to disbursement of the Surplus to the State of

Hawaii.  In an interpleader action, the court has discretion to award attorney's fees

and costs to the stakeholder when it is fair and equitable to do so. See Gelfgren v.

Republic National Life Insurance Co. et al., 680 F.2d 79, 81 (9th Cir. 1982).  The

Ninth Circuit has noted, however, that the award of attorney's fees to a

disinterested stakeholder is typically modest and should be limited.

> Because the interpleader plaintiff is supposed to be
> disinterested in the ultimate disposition of the fund,
> attorneys' fee awards are properly limited to those fees
> that are incurred in filing the action and pursuing the
> plan's release from liability, not in litigating the merits of
> the adverse claimants' positions. Compensable expenses
> include, for example, preparing the complaint, obtaining
> service of process on the claimants to the fund, and
> preparing an order discharging the plaintiff from liability
> and dismissing it from the action. Because the scope of
> compensable expenses is limited, attorney's fee awards to
> the 'disinterested' interpleader plaintiff are typically
> modest. Moreover, because attorneys' fees are paid from
> the interpleaded fund itself, there is an important policy
> interest in seeing that the fee award does not deplete the

fund at the expense of the party who is ultimately deemed entitled to it.

Trustees of the Director's Guild of America-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 426-27 (9th Cir. 2000) (citations omitted); see also Island Title, 488 F. Supp. 2d at 1096.

The Court concludes that the interests of equity would be served if the interpleader plaintiff received some of its attorney's fees and costs from the State of Hawaii's claim.  See United States v. Chapman, et al., 281 F.2d 862, 871 (10th Cir. 1960).  US Bank is entitled to reasonable attorney's fees and costs subject to the parameters set forth in Tise, 234 F.3d at 426-27.

The Court orders US Bank to submit a petition for attorney's fees and costs to the Magistrate Judge, supported by affidavits showing fees and costs and how they were accrued.  The Magistrate Judge is informed, however, that the State of Hawaii's obligation to pay US Bank's attorney's fees and costs should be limited so as not to defeat its rightful claim to the funds to satisfy its tax lien.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant State of Hawaii's Motion for Summary Judgment and DENIES Defendant Yamamura's Amended Motion for Summary Judgment.  The Court further ORDERS US Bank

to submit a petition for attorney's fees and costs to the Magistrate Judge, supported

by affidavits showing fees and costs and how they were accrued, subject to the

limitations outlined above.

    IT IS SO ORDERED.

    DATED:  Honolulu, Hawaii, September 10, 2009.



_____
David Alan Ezra
United States District Judge

US Bank National Association v. Yamamura, et al., Civ. No. 08-00358 DAE-KSC;
ORDER GRANTING DEFENDANT DIRECTOR OF TAXATION, STATE OF
HAWAII'S MOTION FOR SUMMARY JUDGMENT AND ORDER DENYING
DEFENDANT PAUL YAMAMURA'S AMENDED MOTION FOR SUMMARY
JUDGMENT